MINNIE O. LETTS *et al. vs.* JULIUS C. HOLGATE, EX.

MARCH 22, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

MURDOCK, J.   This is an appeal from an order of the Probate Court of the Town of Warwick admitting to probate the will of Mary E. Reynolds.   In the Superior Court the trial justice directed the jury to return a verdict sustaining the will and the case is here on appellants' exception to the decision granting the motion for a directed verdict.   The appellants are a sister, a nephew and a niece of the testatrix.

From the record it appears that Dr. Royal C. Hudson was called to attend the testatrix December 19, 1931, at about 9 p. m. and found her in a semi-coma as a result of some "cerebral accident."   He called twice the next day and, on his second visit, the appellee, Julius C. Holgate, was present; someone suggested that the patient be taken to a hospital and Dr. Hudson recommended the Jane Brown Hospital. The appellee suggested the South County Hospital in Wakefield, giving as his reason that it was nearer to his home. When Dr. Hudson last saw the testatrix before her removal to South County Hospital she was still in a semi-conscious condition and in his opinion unable to make a will.   Three days later on the 23rd day of December, being unable to write by reason of paralysis, she signed by her mark the will in question.   By this instrument she left all her property to "my trusted friend and adviser Julius C. Holgate."   The third clause of the will is as follows: "I have intentionally omitted my sister and other relatives from this will because the only person who has been kind and helpful to me in my last years has been Julius C. Holgate."

On December 26, the appellant, Minnie O. Letts, sister of the testatrix, saw her at the hospital.   Testatrix did not recognize her sister and was unable to speak.   On December 30 she died.

The will was drawn at the hospital by an attorney sent there for that purpose by Julius C. Holgate, who was, according to some of the testimony for the proponents, in the room when the will was executed.

The testatrix and her sister, owing to a disagreement as to the disposition of their father's estate, had not been on

friendly terms for a number of years but her relations with her niece, Consuelo Huling, while not intimate, were friendly.

It is seldom that undue influence can be proved by direct evidence. Its exercise ordinarily has to be proved by circumstantial evidence and the inferences that may reasonably be drawn therefrom. *Huebel* v. *Baldwin*, 45 R. I. 40.

In the present case it is undisputed that the appellee had the opportunity to exercise undue influence. He was, according to the will, the trusted friend and adviser of the testatrix and thus stood if not in a fiduciary at least in a confidential relationship to her. While she was in a semi-conscious condition he placed her in a hospital of his own choosing. Orders were given, by whom it does not appear, that no one, except the appellee and his wife, were to see her. He sent the lawyer to draw the will and it does not appear that this was done at her request.

The testatrix was in a critical condition. She was suffering from a cerebral ailment and, even though she recovered full consciousness on the 23rd of December, three days after her admittance to the hospital, the circumstances surrounding the making of the will call for more than formal proof of the testamentary capacity of the testatrix and her freedom from undue influence.

The only proof offered by the proponent in support of the petition for the probate of the will was the usual, formal testimony of the subscribing witnesses. Such proof under the circumstances of this case is not sufficient to establish the validity of the will. Neither the proponent nor the physician who attended the testatrix at the hospital were called as witnesses. Their failure to testify under the circumstances furnishes ground for an inference, which the jury might properly draw, that they were not called to testify for fear that their testimony would be unfavorable to the validity of the will. *Huebel* v. *Baldwin, supra.*

We are of the opinion that the rule as expressed in Jarman on Wills, 6th ed., Vol. 1 p. 49, is applicable to this case. The rule is as follows: "In cases of weakness of mind, arising

from the near approach of death, strong proof is required that the contents of the will were known to the testator, and that it was his spontaneous act. A suspicion is justly entertained of a will conferring large benefits on the person by whom, or by whose agent it was prepared . . . ." *Mullen* v. *McKeon*, 25 R. I. 305; *Gager* v. *Mathewson*, 93 Conn. 539. The question as to the validity of the will should have been submitted to the jury.

The appellants' exception to the decision granting the motion for a directed verdict is sustained and the case is remitted to the Superior Court for a new trial.

*William H. McSoley, William B. Sweeney,* for appellants.

*Quinn, Kernan & Quinn, Michael De Ciantis,* for appellee.